IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

TINA W.,[1]                          §
                                     §
          Plaintiff,                 §
                                     §
v.                                   §    CIVIL ACTION NO. 5:20-CV-002-H-BQ
                                     §
COMMISSIONER OF SOCIAL SECURITY,     §
                                     §
          Defendant.                 §

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Plaintiff Tina W. seeks judicial review under 42 U.S.C. § 405(g) of the Social Security
Commissioner's decision denying her application for supplemental security income. Under
Special Order 3-251, the United States District Judge referred this case to the undersigned United
States Magistrate Judge for further proceedings. The parties did not unanimously consent to
proceed before a magistrate judge. The undersigned has considered the parties' briefing and
arguments, the administrative record, and applicable law, and in accordance with the order of
referral, makes the following findings, conclusions, and recommendations to the United States
District Judge. Specifically, the undersigned recommends that the District Judge affirm the
Commissioner's decision.

## I.    Statement of the Case

Plaintiff filed an application for supplemental security income benefits on December 17,
2016, alleging a disability onset date of May 2, 2015. Tr. 11. The Social Security Administration
(SSA) denied her application on March 21, 2017, and again upon reconsideration on June 23, 2017.

---

[1] To protect the privacy of plaintiffs in social security cases, the undersigned identifies Plaintiff only by first name and
last initial.

*Id.* Plaintiff then requested a hearing before an administrative law judge (ALJ). *Id.* Represented by counsel, Plaintiff appeared and testified before an ALJ on August 3, 2018. Tr. 32–50. A vocational expert (VE) also testified at the hearing. *Id.*

The ALJ determined on April 29, 2019, that Plaintiff was not disabled because the national economy contains a significant number of jobs she can perform, despite her inability to return to her past relevant work. Tr. 23. The Appeals Council denied Plaintiff's request for review. Tr. 1. As a result of this denial, the ALJ's decision became the Commissioner's final decision and is therefore properly before the Court for review. *Sims v. Apfel*, 530 U.S. 103, 107 (2000); *see also Higginbotham v. Barnhart*, 405 F.3d 332, 337 (5th Cir. 2005) (holding that the Commissioner's final decision necessarily incorporates the Appeals Council's denial of a claimant's request for review).

## II.    Standard of Review

A court reviewing the Commissioner's denial of social security benefits is limited to determining whether:  (1) the decision is supported by substantial evidence in the record; and (2) the Commissioner applied the proper legal standards. *See* 42 U.S.C. § 405(g) (2012); *see, e.g.*, *Higginbotham*, 405 F.3d at 335. "Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983). A reviewing court must examine the entire record, including evidence favorable to the Commissioner as well as contrary evidence. *See Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990). The court "may not reweigh the evidence in the record, nor try the issues *de novo*, nor substitute [the Court's] judgment for the [Commissioner's]." *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994) (quoting *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988)). If substantial evidence supports the Commissioner's

findings, they are treated as conclusive and will be affirmed. 42 U.S.C. § 405(g) (2012); *Richardson v. Perales*, 402 U.S. 389, 390 (1971).

Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Commissioner makes a disability determination by conducting a five-step sequential evaluation to determine whether: (1) the claimant is currently working; (2) the claimant has a "severe impairment"; (3) the impairment meets or equals an impairment listed in Appendix 1 of the regulations; (4) the claimant is capable of performing past relevant work; and (5) the claimant, after taking into account age, education, previous work experience, and residual functional capacity, is capable of performing any other work. 20 C.F.R. § 404.1520(a)(4) (2016); *Audler v. Astrue*, 501 F.3d 446, 447–48 (5th Cir. 2007). If the Commissioner makes a disability determination at any step in the process, the finding is conclusive and the analysis terminates. *See Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994).

The claimant bears the burden of proof in the first four steps of the analysis. *Id.* If the claimant can satisfy that burden, the Commissioner must then demonstrate that the claimant is capable of performing other work that exists in significant numbers in the national economy. *Id.* After making such a showing, the burden ultimately shifts back to the claimant to rebut the Commissioner's finding. *See Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000).

### III.   Facts

Plaintiff claims she became disabled on May 2, 2015, due to myriad health issues. Tr. 11, 14–17. Plaintiff has a high school level education and a previous work history primarily as a short order cook.[2] Tr. 23.

At step one, the ALJ concluded that Plaintiff's part-time employment did not qualify as "substantial gainful activity." Tr. 14. The ALJ found at step two that Plaintiff has the following medically determinable impairments: "anxiety disorder; depression disorder; and post carpal tunnel release." Tr. 14. These impairments "significantly limit the ability to perform basic work activities as required by SSR 85-20." *Id.* Although the record indicates that Plaintiff also suffers from "non-insulin diabetes and left ear hearing loss," the ALJ determined that these conditions are "non-severe" because they "do not significantly limit her physical or mental ability to do basic work activities." Tr. 17. Further, the ALJ noted that, as to Plaintiff's fibromyalgia complaint, "there [is] no medical evidence of record regarding testing or treatment for [Plaintiff's] fibromyalgia" and referenced a physician's report opining that, to the extent it exists, it did not seem to be limiting her functional life. *Id.* In so concluding, the ALJ emphasized that a "medically determinable impairment" is defined as one that is "established by medical evidence" rather than solely the claimant's "**statement of symptoms**." *Id.* (quoting 20 C.F.R. § 416.921). Despite the ALJ finding medically determinable impairments, i.e., anxiety disorder, depression disorder, and post carpal tunnel release, the ALJ nevertheless found at step three that Plaintiff does not have an impairment or combination of impairments that are listed in, or that equal in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. 18.

---

[2] Plaintiff also spent time at jobs where she "performed duties of cashier, stocking, cleaning restrooms and cooler, kitchen fryer, . . . closing[,] . . . paperwork, and clean up." Tr. 14.

The ALJ assessed Plaintiff's residual functional capacity (RFC) and found that she has the ability "to perform less than the Full Range of medium work as defined in 20 CFR 416.967(c) except frequent upper right extremity handling" and it "must be limited to simple, routine, and repetitive tasks." Tr. 19. The ALJ further limited Plaintiff to work with "occasional interaction with co-workers, supervisors, and the public." *Id.* The ALJ concluded that this RFC "assessment is supported by the claimant's medical evidence of record when considered as a whole, including the objective evidence." Tr. 22.

Relying on the testimony of a VE, the ALJ concluded that while Plaintiff is not capable of performing her past relevant work, she is capable of performing work in the national economy. Tr. 23–24. The VE testified that an individual with Plaintiff's age, education, work experience, and RFC would be able to perform the requirements of jobs such as "Salvage Laborer (DOT #929.687-022), . . . Hand Launderer (DOT #361.684-010), . . . and Meat Clerk (DOT #222.684-010)." Tr. 24. Accordingly, the ALJ determined that Plaintiff "is capable of making a successful adjustment to other work that exists in significant numbers in the national economy" and is therefore not disabled. *Id.* Stated differently, the ALJ determined Plaintiff was not disabled at step three and again at step five.

Plaintiff argues on appeal that the ALJ erred in two ways: (1) "[t]he ALJ's mental RFC determination is not supported by substantial evidence because she failed to weigh the opinion of [the] consulting psychologist"; and (2) "[t]he ALJ's physical RFC determination is not supported by substantial evidence because she failed to properly weigh the opinion of long time treating physician's assistant . . . and crafted an RFC that provides for handling limitations that were made up out of whole cloth." Pl.'s Br. 1, ECF No. 18. The Court examines each contention in turn.

IV.    **Discussion**

**A. The ALJ's mental RFC determination is supported by substantial evidence, and the ALJ's failure to assign weight to the consulting psychologist's opinion does not constitute reversible error as to Plaintiff's mental RFC.**

Plaintiff argues that the ALJ erred by failing to weigh the opinion of consulting psychologist, Kenneth McTague, Ph.D.[3] Pl.'s Br. 8. According to Plaintiff, the ALJ "provided a very brief summary of Dr. McTague's evaluation" but "failed to discuss or weigh the opinion proffered by the psychologist which is clearly supportive of the limitations identified." *Id.* at 9. Specifically, Plaintiff notes the psychologist opined, *inter alia*, that (1) a low stress part-time job may be appropriate; (2) depressive episodes and panic attacks may interfere with work; (3) Plaintiff may benefit from a job coach; (4) Plaintiff "is distant and rarely enjoys large groups of people"; and (5) Plaintiff "is sometimes less dependable than ideal" and "when tasks become difficult she is prone to quit." *Id.* Plaintiff avers that "[t]he ALJ should have assessed the opinion, should have discussed the reasons for the weight [s]he ascribed to that opinion, and should have stated [her] specific findings regarding Plaintiff's limitations, setting forth how [s]he reconciled the discrepancies in the record." *Id.* at 10. Ultimately, Plaintiff claims the ALJ's mental RFC determination is not supported by substantial evidence because the "ALJ failed to discuss or weigh this opinion[; therefore,] . . . this court cannot meaningfully review the ALJ's decision" and remand is required. *Id.* at 11.

In response, the Commissioner argues that Plaintiff "failed to point to any finding by Dr. McTague that falls within the definition of a medical opinion." Def.'s Br. 3, ECF No. 19.

---

[3] At the time Plaintiff filed her claim (December 17, 2016), Social Security regulations required ALJs to "weigh medical opinions." 20 C.F.R. § 404.1527(c). SSA subsequently changed its regulations as follows: "For claims filed on or after March 27, 2017 . . . [w]e will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) . . . ." 20 C.F.R. § 404.1520c(a); *see Winston v. Berryhill*, 755 F. App'x 395, 402 n.4 (5th Cir. 2018).

Specifically, the Commissioner contends that Dr. McTague's opinion that Plaintiff could only work part-time is essentially a finding that Plaintiff is disabled, which is a conclusion reserved for the ALJ. *Id.* Moreover, the Commissioner asserts that "Dr. McTague did not provide specific limitations on [Plaintiff's] ability to work" and "did not quantify what" his opinions meant, i.e., whether "low stress" meant "no production pace jobs, no working with the public, or not having to make decisions." *Id.* at 4. The Commissioner similarly alleges that "[n]othing in the medical record supports a finding that [Plaintiff] had 'depressive episodes' such that she would be unable to work" and Dr. McTague did "not address [the panic attacks] in terms of their impact on her ability to work, but instead the possible impact on her coworkers." *Id.* Finally, the Commissioner notes that Plaintiff was able to continue working part-time, thus demonstrating that Plaintiff "was not as limited as she alleged" and "that she did not need a job coach to help her find or maintain a job." *Id.* at 5.

Plaintiff's reply counters that "Dr. McTague is a medical source [who] reflected judgments about the severity of Plaintiff's impairments and what she is capable of doing." Pl.'s Reply Br. 1–2, ECF No. 20. Moreover, in Plaintiff's view, even if Dr. McTague offered opinions reserved for the ALJ, the ALJ must have said so; the ALJ is required to "properly analyze the evidence and provide this Court with the tools necessary to conduct a meaningful review of the decision." *Id.* at 2–3. In conclusion, Plaintiff reiterates that the ALJ's failure to properly weigh the medical opinion requires remand for further development. *Id.* at 3.

The threshold question before the Court, then, is whether Dr. McTague's assessment is a "medical opinion" within the meaning of the Social Security regulations. *See Winston*, 755 F. App'x at 402. The Social Security Act defines a "medical opinion" as a "'statement' from a physician, psychologist, or other acceptable medical source that 'reflect[s] judgments about the

nature and severity of [the claimant's] impairment(s), including [her] symptoms, diagnosis and prognosis, what [she] can still do despite impairment(s), and [her] physical or mental restrictions.'" *Id.* (citation omitted); *accord* 20 C.F.R. § 404.1527(a)(2). Accordingly, a medical assessment that diagnoses and observes a patient, but does not opine on what the patient can do, is not a "medical opinion." *See Winston*, 755 F. App'x at 402–03 (concluding that "a 'medical opinion' requires both an evaluation of symptoms and an expression of judgment regarding a claimant's capabilities and restrictions," e.g., opining as to a claimant's work limitations (can stand for no longer than 30 minutes) resulting from her symptoms or condition) (citing *Kneeland v. Berryhill*, 850 F.3d 749, 759 (5th Cir. 2017)). Here, Dr. McTague diagnosed Plaintiff, recorded his observations and Plaintiff's reported symptoms, and made several recommendations. Plaintiff relies on three recommendations in support of her argument that Dr. McTague's assessment constitutes a medical opinion not properly considered by the ALJ: (1) "[a] low stress part-time job as an officer worker may be appropriate"; (2) "[a] job coach might be helpful to her"; and (3) "a low stress and supportive work environment is needed." Pl.'s Br. 9–10; Tr. 307.

First, Dr. McTague's belief that a "part-time job as an office worker may be appropriate" is conclusory[4] and does not provide a "medical assessment that diagnoses and observes" what specific functions Plaintiff can perform given her diagnosed mental limitations. Tr. 306. Instead, the statement "address[es] the environment that would optimize [Plaintiff's] work possibilities, rather than those required by her disabilities" and, as such, does not constitute "a medical opinion as to the limitations of her disability." *Conrad v. Barnhart*, 434 F.3d 987, 991–92 (7th Cir. 2006)

---

[4] "Conclusory statements to the effect that the claimant is disabled or unable to work are legal conclusions, not medical opinions, and are not entitled to any special significance." *Gachter v. Colvin*, Civil Action No. 4:13-CV-168-Y, 2014 WL 2526887, at *4 (N.D. Tex. June 4, 2014) (citing 20 C.F.R. §§ 404.1527(e), 416.927(e)); *see Frank v. Barnhart*, 326 F.3d 618, 620 (5th Cir. 2003). Thus, Dr. McTague's assessment includes "a conclusion that, of itself, is not a medical opinion." *Richardson v. Colvin*, No. 4:15-CV-0879-BL, 2017 WL 237637, at *10 (N.D. Tex. Jan. 17, 2017).

(finding ALJ did not err in failing to consider doctor's opinion claimant should be limited to part-time work because it did not qualify as a medical opinion).

Likewise, Dr. McTague's recommendation that Plaintiff *might* benefit from a job coach similarly fails to qualify as a medical opinion under the Social Security Act. *See Winston*, 755 F. App'x at 403; *see also Beard v. Comm'r of Soc. Sec.*, No. 8:17-cv-2940-T-PDB, 2019 WL 1417466, at *3 (M.D. Fla. Mar. 29, 2019) (stating that suggestion for plaintiff to "consider part-time employment with a job coach" was not a medical opinion (citing 20 C.F.R. §§ 404.1527(c), 416.927(c) (2012))); *Stevens v. Comm'r of Soc. Sec.*, Case No. 2:14-cv-2186, 2016 WL 1156518, at *3 (S.D. Ohio Mar. 24, 2016) (noting that magistrate judge correctly considered as a non-medical opinion statement "that plaintiff would need a good support system in the early days of employment, such as a job coach who could work with her in close proximity"); *Oliver v. Colvin*, Case No. 8:13-cv-2614-TBM, 2015 WL 10791904, at *5 (M.D. Fla. Mar. 23, 2015) (concluding doctor's statement that plaintiff "could benefit from a job coach" was not a medical opinion under the Social Security Act); *but see Chavez v. Saul*, CV No. 19-1208 CG, 2020 WL 5255274, at *7 (D.N.M. Sept. 3, 2020) ("[T]he Court finds [the doctor's] statement regarding use of a job coach constitutes a medical opinion requiring a proper opinion analysis, including assignment of weight.").[5]

Third, Plaintiff highlights Dr. McTague's recommendation that "[b]ecause of her difficulty persisting in frustrating and challenging situations a low stress and supportive work environment is needed." Tr. 307; *see* Pl.'s Br. 9–10. This particular recommendation hits closer to the target—while Dr. McTague's statement arguably satisfies one element of a valid medical opinion, i.e.,

---

[5] For the reasons set forth in *Conrad*, the undersigned finds *Beard*, *Stevens*, and *Oliver* more on point. Dr. McTague's conditional finding that Plaintiff *might* benefit from a job coach, unsupported by any specific identified mental limitations she may have, falls more in line with describing "the environment that would optimize her work possibilities, rather than those *required* for her disability." *Conrad*, 434 F.3d at 992 (emphasis added).

containing an evaluation of her symptoms or condition, the recommendation, as in *Winston*, fails to express a judgment as to Plaintiff's specific capabilities and restrictions. *See Winston*, 755 F. App'x at 402 (concluding doctor's evaluation did not qualify as a medical opinion because while it outlined "diagnoses and observations," the evaluation left "other personnel to draw conclusions about the implications for [claimant's] RFC"). Although he opined about Plaintiff's required work environment, he did not connect these observations with Plaintiff's impairments or what Plaintiff can still do despite her impairments, nor did he quantify Plaintiff's limitations in any discernable way. *See id.*; 20 C.F.R. § 404.1527(a)(2); *compare Ahlstrom v. Astrue*, Civil No. 08–5768 (RHK/RLE), 2010 WL 147880, at *25 (D. Minn. Jan. 11, 2010) ("In context, [the doctor's] statement . . . is much more akin to a bald, conclusory statement, than it is to a medical opinion, for no clinical measures are detailed, nor are any other clinical, diagnositic [sic], or prognostic tests disclosed."), *with Kneeland*, 850 F.3d at 759 (concluding doctor's "opinion me[t] this definition as he examined Kneeland, noted observations from that examination, and opined on her work limitations" where he estimated that claimant could not "work any job that entails standing for longer than 30 minutes or walking farther than 50 yards"), *and Ellis v. Barnhart*, 392 F.3d 988, 995 (8th Cir. 2005) (physician's opinion that the plaintiff "could only stand for a total of two hours and sit for a total of four hours in a work day" because of severe chronic pain was "arguably" a medical opinion).

Accordingly, the undersigned concludes that Dr. McTague's assessment is not a medical opinion under the Social Security Act (*see Winston*, 755 F. App'x at 403), and the ALJ's failure to assign it a specific weight provides no basis for reversing the Commissioner's decision. In the alternative, even assuming Dr. McTague's assessment constitutes a valid medical opinion under the Social Security Act, Plaintiff must also show that the ALJ erred by failing to assign Dr.

McTague's opinion a particular weight and, if so, that the ALJ's decision is not otherwise supported by substantial evidence. Here, Plaintiff has not satisfied both elements.

> 1. *If Dr. McTague's assessment constitutes a valid medical opinion, Agency regulations and applicable case law require the ALJ to assign a weight to it.*

Conflicts in the evidence are for the ALJ—not the court—to resolve. *Hernandez v. Astrue*, 269 F. App'x 511, 515 (5th Cir. 2008) (citing *Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995)). Nor may this Court "re-weigh the evidence." *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000). An ALJ is free to reject any medical opinion when the evidence supports a contrary conclusion. *Qualls v. Astrue*, 339 F. App'x 461, 466 (5th Cir. 2009) (quoting *Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir. 1987)). Indeed, an ALJ may even completely disregard the opinion of a treating physician. *See Brown v. Apfel*, 192 F.3d 492, 500 (5th Cir. 1999). And the Social Security regulations "do not require an ALJ to state the weight given to each symptom and diagnosis in the administrative record." *Michelle K. M. v. Berryhill*, Civil Action No. 3:17-CV-3044-BH, 2019 WL 1243355, at *13 (N.D. Tex. Mar. 18, 2019) (citing *Proge v. Comm'r of Soc. Sec.*, Civil Action No. 3:13cv310–SAA, 2014 WL 4639462, at *4 (N.D. Miss. Sept. 16, 2014)).

Yet, as Plaintiff correctly notes, the regulations provide that the SSA "will evaluate every medical opinion . . . receive[d]." 20 C.F.R. § 416.927(c). An "ALJ's failure to mention a particular piece of evidence[, however,] does not necessarily mean that [s]he failed to consider it," particularly where, as here, "the ALJ's decision states explicitly that [s]he considered the entire record in [her] decision." *Hammond v. Barnhart*, 124 F. App'x 847, 851 (5th Cir. 2005). Nevertheless, "[a]n ALJ must address and make specific findings regarding the supporting and conflicting evidence, the weight to give that evidence, and reasons for his or her conclusions regarding the evidence." *Jones v. Saul*, No. 3:19-CV-0880-BH, 2020 WL 5752390, at *19 (N.D.

Tex. Aug. 24, 2020) (citing *Armstrong v. Sullivan*, 814 F. Supp. 1364, 1373 (W.D. Tex. 1993)), *R. & R. adopted by* 2020 WL 5747873 (N.D. Tex. Sept. 25, 2020).

The record reflects that the ALJ "considered all medical opinions" and "considered the nature and length of treating relationship areas of specialty, findings supporting the opinions, and similar factors." Tr. 21. She specifically discussed the assessments of several medical sources, including those of Dr. McTague, although she did not specify the *weight* she afforded Dr. McTague's opinion. *See id.* at 22.

Initially, the Court notes that this is not a case where the ALJ rejected the opinion of a treating physician. *See* 20 C.F.R. § 404.1502 (2011) (defining a non-treating source as a physician "who has examined [claimant] but does not have, or did not have, an ongoing treatment relationship with [claimant]"); *Hernandez v. Astrue*, 278 F. App'x 333, 338 (5th Cir. 2008) (stating that "as a consultative examiner instead of a treating physician, [a consultant's] opinion is not accorded the controlling weight given to treating physicians"). Instead, as Plaintiff acknowledges (Pl.'s Br. 9), the ALJ reviewed the opinions of all treating and consulting medical personnel, including that of one-time consulting psychologist Dr. McTague, and implicitly determined that Dr. McTague's opinion was entitled to less weight. *See* Tr. 15 (summarizing Dr. McTague's assessment), 20 (stating that in making the RFC determination the ALJ "considered opinion evidence"), 21 (stating that the ALJ "considered all medical opinions" and "also considered the nature and length of the treating relationship, areas of specialty, findings supporting the opinions, and similar factors"). Moreover, Plaintiff also concedes that the ALJ *discussed* Dr. McTague's assessment but instead takes issue with the ALJ's failure to *assign* his opinion a particular weight. Pl.'s Br. 9. Thus, by not incorporating Dr. McTague's opinions about Plaintiff's possible employment into her findings, the ALJ tacitly rejected Dr. McTague's opinion in this regard.

The Social Security regulations require, however, that an ALJ *expressly* articulate the weight afforded to medical opinions such as Dr. McTague's. *See Kneeland*, 850 F.3d at 760 (rejecting Commissioner's argument that "ALJ's decision implicitly, rather than explicitly, reject[ed]" medical opinion and reaffirming "the general rule that rejecting a conflicting medical opinion nevertheless requires an explanation"); *Hammond*, 124 F. App'x at 851 (concluding that "although there is no statutorily or judicially imposed obligation for the ALJ to list explicitly all the evidence he takes into account in making his findings, § 404.1527(f)(2) does require that the ALJ articulate the weight given to experts in the positions of [state agency psychological consultants"); *Andrews v. Astrue*, 917 F. Supp. 2d 624, 638 (N.D. Tex. 2013) (citing 20 C.F.R. §§ 404.1527(f)(2)(ii), 416.927(f)(2)(ii)) ("The ALJ was . . . required to articulate the weight given to the opinions of [consulting physician] and [state agency psychological consultant]."); *see also* 20 C.F.R. § 404.1527(f)(2) ("The adjudicator generally should explain the weight given to opinions from these sources or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case.").

Accordingly, assuming Dr. McTague's recommendation qualifies as a valid medical opinion, the ALJ erred in considering the opinion but failing to assign it a specific weight.

   *2. Substantial evidence supports the ALJ's mental RFC determination.*

Although the ALJ was required to specifically define the weight given to Dr. McTague's opinions, any error in not doing so is harmless because substantial evidence otherwise supports her decision. *See Andrews*, 917 F. Supp. 2d at 638 (concluding that the ALJ was required to describe the weight given; however, any error was harmless in light of substantial evidence supporting the ALJ's decision); *see also Ware v. Colvin*, No. 11–CV–1133–P, 2013 WL 3829472,

at *4 (N.D. Tex. July 24, 2013) (citing *January v. Astrue*, 400 F. App'x 929, 933 (5th Cir. 2010) (per curiam)) ("Remand is required only when there is a realistic possibility that the ALJ would have reached a different conclusion absent the procedural error.").

"A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision." *Harris*, 209 F.3d at 417. To determine whether substantial evidence supports an ALJ's decision, courts consider four factors: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) subjective evidence of pain and disability; and (4) claimant's age, education, and work history. *Wren v. Sullivan*, 925 F.2d 123, 126 (5th Cir. 1991) (citing *DePaepe v. Richardson*, 464 F.2d 92, 94 (5th Cir. 1972)).

The first and second elements require examination of the objective medical evidence and the diagnosis and expert opinions of treating and examining physicians. *Wren*, 925 F.2d at 126. As the ALJ noted, the objective medical evidence shows that Plaintiff has "consistently sought mental health treatment including medications." Tr. 14. The record also reflects, however, some inconsistency as to the severity of Plaintiff's claimed mental impairments.

Treating psychiatrist Dr. Patel conducted a psychiatric evaluation at the end of October 2016 and diagnosed Plaintiff with recurrent moderate major depression, anxiety disorder not otherwise specified, and panic disorder, and subsequently recommended increasing Plaintiff's medications. Tr. 295–97. He noted that Plaintiff had been taking two mental health medications, "which initially helped her significantly," but were less effective since the death of her husband. Tr. 295. Dr. Patel assessed her as having "moderate" symptoms of depression and "mild to moderate" anxiety; however, the mental health examination was otherwise unremarkable. Tr. 295, 297. Plaintiff failed to return to Dr. Patel. Tr. 382.

14

A few months later, Ken McTague, Ph.D., assessed Plaintiff, and diagnosed her with major depressive disorder (recurrent, mild) and panic disorder with agoraphobia. Tr. 306. He noted that Plaintiff manages her own medications, communicates regularly with friends and family, and performs daily activities such as "straightening the house" and playing with her dog. Tr. 304. Plaintiff was able to complete cognitive tasks such as spelling "world" backwards and correctly interpreting an abstract saying. Tr. 305. Plaintiff reported to Dr. McTague that "[s]he believes she can work filing data or doing office computer work at a desk" but did "not want to work on a job involving her dealing much with others." *Id.* Dr. McTague reported that Plaintiff "is prone to experience a high level of negative emotion and frequent episodes of psychological distress" and although she is "[m]oderately punctual and well organized, she is sometimes less dependable and reliable than ideal." Tr. 306.

In August 2017, physician's assistant (PA) Tara Lewis diagnosed Plaintiff with generalized anxiety disorder with agoraphobia and major depression but did not otherwise opine as to Plaintiff's mental/emotional limitations. Tr. 310. The following month, Plaintiff met with Rickeal Preston, MS, Licensed Behavioral Practice, who conducted a Mental Capacity Assessment. Tr. 312. According to Preston, Plaintiff would have *slight*[6] limitations in the following areas: (1) ability to remember locations and work-like procedures; (2) ability to carry out detailed instructions; (3) the ability to work in coordination with or in proximity to others without being distracted by them; (4) the ability to perform at a consistent pace with a standard number and length of rest periods; (5) the ability to respond appropriately to changes in the work setting; and (6) the ability to travel in unfamiliar places or use public transportation. Tr. 313–15. In the

---

[6] According to the records, "slight" is defined as only "mild limitation" such that "the individual can generally function satisfactorily." Tr. 313. The scale operates in order of increasing severity as follows: none, slight, moderate, marked, or extreme. *Id.*

remaining seventeen categories, Preston assessed Plaintiff as having no limitations at all. *Id.*
Preston also opined that Plaintiff had no significant social issues and concerns, and any impairment
is "not to the extent that would interfere with functioning." Tr. 315. Further, Plaintiff's records
indicate that in January 2018, her mental illness was improving, and she had fewer symptoms. Tr.
489. Similarly, in May, a mental examination revealed she was alert, oriented, cooperative,
pleasant, and in no distress. Tr. 463.

      The third element to be weighed is the subjective evidence of the claimant's symptoms.
*Wren*, 925 F.2d at 126. In addition to Plaintiff's subjective history, as reported to medical
personnel above, Plaintiff also testified before the ALJ. Tr. 35–46. Concerning her mental
disorders, she testified that she attends therapy once a week to treat her anxiety and depression.
Tr. 41. Plaintiff alleged that she suffers from anger issues, depression, hypertension, and
agoraphobia due to those impairments. Tr. 42. More specifically, by way of illustration, she
claimed that she "can push [herself] to go on [her] own" to the grocery store although she has
"difficulties being around the public." *Id.* Moreover, she testified that she sometimes struggles
with her memory (such as remembering dates) but is able to enjoy some hobbies and maintain
relationships with others. Tr. 43.

      The fourth and final element consists of the plaintiff's educational background, work
history, and present age. *Wren*, 925 F.2d at 126. Under the regulations, a claimant is disabled
only if her physical or mental impairments are of such severity that she cannot perform her
previous work and, considering her age, education and work experience, cannot engage in any
other kind of substantial gainful work which exists in the national economy. 42 U.S.C.
§ 423(d)(2)(a). Plaintiff has a high school level education and previous work history primarily as
a short order cook. Tr. 23. She was born August 23, 1962, meaning she was 54 years old at the

time she filed her application and nearly 56 at the hearing. *Id.* During the hearing, the ALJ posed hypothetical questions to a VE about an individual of Plaintiff's age, education, and work experience. Tr. 46–49. According to the VE, such an individual—if limited to simple, routine, repetitive tasks and occasional interaction with coworkers, her supervisor, and the public—would be able to perform jobs in the medium range. *Id.*

Considering the record evidence, the ALJ assessed Plaintiff's RFC and determined that she has the ability "to perform less than the Full Range of medium work" and "must be limited to simple, routine, and repetitive tasks" and "occasional interaction with co-workers, supervisors, and the public." Tr. 19. In so holding, the ALJ gave "great weight" to Dr. Patel's mental assessment and "some weight" to behavioralist Preston's evaluation. Tr. 22. More specifically, as outlined above, Dr. Patel diagnosed Plaintiff with moderate, recurrent major depression; anxiety, not otherwise specified; and panic disorder. Tr. 297. And as to Plaintiff's limitations, Preston concluded that Plaintiff has slight limitations with her memory, carrying out complex or detailed tasks, the ability to work with or around others, and the ability to cope with changes in her work setting. Tr. 313–15. Thus, the ALJ's mental RFC reflects Dr. Patel's diagnoses and Preston's assessment of Plaintiff's limitations.

In conjunction with an analysis of whether Plaintiff has an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in Appendix 1 of the regulations, the ALJ further discussed the impact of Plaintiff's mental impairments. Tr. 18. The ALJ explained that the medical evidence does not establish that Plaintiff's mental disorders, either considered in isolation or combination, satisfy the requirements for adult mental disorders described in listings 12.04 and 12.06. *Id.* Specifically, the objective medical evidence does not show that Plaintiff's mental impairments result in at least one extreme

or two marked limitations in a broad area of functioning, i.e., understanding, remembering, or applying information; interacting with others; concentrating, persisting or maintaining pace; or adapting or managing themselves. *See* Disability Evaluation Under Social Security: 12.00 Mental Disorders - Adult, Social Security Online, 12.04 Depressive, bipolar and related disorders https://www.ssa.gov/disability/professionals/bluebook/12.00-MentalDisorders-Adult.htm#12_04 (last visited Feb. 12, 2021). Nor does the medical evidence indicate that Plaintiff's mental health disorders are "serious and persistent" such that there is a medically documented history of the existence of the disorders over a period of at least two years and, conversely, there is evidence of both: (1) "[m]edical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s) that is ongoing and that diminishes the symptoms and signs of [the] mental disorder," and (2) "[m]arginal adjustment, that is, [the plaintiff] ha[s] minimal capacity to adapt to changes in [her] environment or to demands that are not already part of [her] daily life." *Id.*

Finally, the ALJ also noted Plaintiff's own reports that she is able to perform daily tasks and hobbies, can provide emotional support for others, has "no limitations" understanding and following instructions, and is able to drive and go out alone. Tr. 18–19. Indeed, Plaintiff testified at the hearing that she "can push [herself] to go on [her] own" to the grocery store although she has "difficulties being around the public." Tr. 42.

Accordingly, the record reflects that there is "more than a scintilla" of evidence supporting the ALJ's mental RFC determination, including objective medical evidence, medical opinions and assessments, subjective evidence from Plaintiff herself, and Plaintiff's age, education, and work experience. *See Carey*, 230 F.3d at 135; *Harris*, 209 F.3d at 417; *see also Taylor v. Astrue*, 706 F.3d 600, 602–03 (5th Cir. 2012) (rejecting claim that ALJ's decision was not supported by substantial evidence because the objective medical evidence did not indicate disability); *Vaughan*

*v. Shalala*, 58 F.3d 129, 131 (5th Cir. 1995) (concluding ALJ's decision was supported by substantial evidence where claimant stated "her social contacts and driving were not restricted and that she could perform household chores like cooking, making the bed, and washing," and "ALJ concluded that several of the symptoms allegedly plaguing [claimant] were not consistent with the objective medical evidence"); *Phyllis R. v. Berryhill*, Civil Action No. 3:18-CV-478-D-BT, 2019 WL 1367684, at *5 (N.D. Tex. Mar. 8, 2019) ("The ALJ's implicit finding that Plaintiff's pain is not disabling is supported by substantial evidence; namely the objective medical evidence of unremarkable physical examinations and conservative treatment."), *R. & R. adopted by* 2019 WL 1358903 (N.D. Tex. Mar. 26, 2019), *aff'd sub nom. Russo v. Saul*, 805 F. App'x 269 (5th Cir. 2020). For these reasons, the undersigned recommends that the District Judge overrule Plaintiff's first point of error and affirm the Commissioner's mental RFC determination.

**B. The ALJ's physical RFC determination is supported by substantial evidence.**

Plaintiff next argues that the ALJ failed to properly consider the opinions of physician's assistant (PA) Tara Lewis. Pl.'s Br. 12. PA Lewis completed two physical assessment questionnaires, one dated August 8, 2017, and a second dated February 2, 2018. Tr. 310–11, 445–46. PA Lewis's assessments varied regarding the impact of Plaintiff's impairments on her ability to function. As noted by Plaintiff, however, the two opinions are consistent with respect to the following: (1) Plaintiff's symptoms are severe enough to frequently interfere with the attention and concentration required to perform simple work-related tasks; (2) Plaintiff will need to recline or lie down in excess of normal work breaks during an eight-hour work day; (3) Plaintiff can walk up to two blocks before needing rest or experiencing significant pain; (4) Plaintiff will need to take unscheduled breaks; and (5) Plaintiff can occasionally lift ten to twenty pounds. Tr. 310–11, 445–46; *see* Pl.'s Br. 12. The ALJ assigned PA Lewis's opinions in the questionnaires minimal weight,

finding that Lewis "is not an acceptable medical source" and her conclusions "were not supported by the record." Tr. 21.

Plaintiff argues that the ALJ erred by affording little weight to PA Lewis's opinions. Pl.'s Br. 12–13. In support, she alleges that the regulations require ALJs to "always consider the medical opinions of record together with the rest of the relevant evidence" and take into account how long the source has treated the claimant, even if the source is not "an acceptable medical source." *Id.* at 13–14. Further, Plaintiff contends that the ALJ's analysis regarding the record and PA Lewis's opinions "cannot stand where [the ALJ] fails to properly discuss the probative evidence of record and explain[] why it is not supported of a medical opinion." *Id.* at 14. Finally, Plaintiff avers that the ALJ's reliance on Plaintiff's ability to perform daily activities is improper because "the ALJ has failed to explain how any of these activities, such as taking care of her pets or performing menial house-care, provides substantial evidence demonstrating that Plaintiff is capable of performing work under the guidelines." *Id.* at 16.

In response, the Commissioner asserts that Plaintiff's argument "relies, in part, on the ALJ not explaining why her muscle and joint pain associated with fibromyalgia did not support Lewis's opinion." Nevertheless, the Commissioner notes the ALJ concluded "that fibromyalgia was not a medically determinable impairment given that there was no evidence of diagnosis or treatment for it." Def.'s Br. 5–6. Next, the Commissioner details the evidence supporting the ALJ's conclusion, including that Plaintiff's "unsupported allegations of pain in her hands/wrists, shoulders, knees, and ankles" are not significant because "no doctor made a diagnosis of a recurring physical issue other than carpal tunnel in her right wrist and osteoarthritis in her left thumb" and she did not seek regular treatment for these complaints "nor did her alleged pain interfere with her ability to work or her ability to perform a wide range of daily activities." *Id.* at

6. Moreover, the Commissioner asserts "[t]he assessment of a claimant's work capacity is reserved solely to the ALJ and is based on all of the evidence, not just the medical evidence," and "the residual functional capacity assessment is a finding of fact that cannot be restricted to merely selecting and endorsing an existing medical opinion." *Id.* at 8.

While Plaintiff filed a reply brief, Plaintiff contends that the Commissioner "did not raise any legal argument" and therefore "reasserts and relies upon the arguments set forth in her" opening brief. Pl.'s Reply Br. 3, ECF No. 20.

*1. The ALJ was not required to assign controlling weight to PA Lewis's opinions.*

Plaintiff first argues that the ALJ erred by "discount[ing] the opinion of a treating source such as [PA] Lewis merely because she is a non-acceptable medical source." Pl.'s Br. 13. Citing Social Security Ruling (SSR) 06-03p, Plaintiff asserts that ALJs are required "to evaluate the opinions of non-acceptable medical sources by looking" at the same factors ALJs would use in evaluating a treating source's opinion. *Id.* The Court disagrees. SSR 06-03p describes the factors ALJs "consider in weighing medical opinions from treating sources, nontreating sources, and nonexamining sources," i.e., acceptable medical sources. SSR 06-03p, 2006 WL 2329939, at *3 (Aug. 9, 2006).[7] Under the Regulations, PA Lewis is not an acceptable medical source. 20 C.F.R. § 416.913(a), (d). The ALJ was therefore not required, as Plaintiff argues, to weigh PA Lewis's opinion using the factors set forth in 20 C.F.R. § 416.927(c). *See* § 416.927(a)(1) (defining "medical opinions" as "statements from acceptable medical sources"), (c) (listing the factors the Agency considers when weighing "any *medical opinion*" (emphasis added)); *see also Thibodeaux v. Astrue*, 324 F. App'x 440, 445 (5th Cir. 2009) (citing SSR 06-03p) ("Only 'acceptable medical

---

[7] Per SSR 06-03p, only an "acceptable medical source" can provide SSA with medical opinions, and "[t]he regulations set out factors [SSA] consider[s] in weighing *medical opinions* from treating sources, nontreating sources, and nonexamining sources." *Id.* at 2 (emphasis added).

sources' can establish the existence of a medically determinable impairment, give medical opinions, and *be considered treating sources* whose medical opinions may be entitled to controlling weight." (emphasis added)); *Carney v. Berryhill*, 2018 WL 3199464, at *3 (W.D. Tex. June 29, 2018) ("Agency policy provides that ALJs may consider opinions from non-acceptable medical sources such as chiropractors, and may apply the factors in doing so, but are not required to by any specific rules.").

Although PA Lewis is not an acceptable medical source and the ALJ was not required to weigh her opinions as a treating source, the ALJ could nevertheless consider her opinions. Specifically, SSR 06-3p explains that "[w]ith the growth of managed health care in recent years and the emphasis on containing medical costs, medical sources who are not 'acceptable medical sources,' such as . . . physician assistants . . . have increasingly assumed a greater percentage of the treatment and evaluation functions previously handled primarily by physicians and psychologists." SSR 06-03p, 2006 WL 2329939, at *3. Thus, "[o]pinions from these medical sources, who are not technically deemed 'acceptable medical sources' under [Agency] rules, are important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file." *Id.* SSR 06-03p provides that, depending on the facts in a case, "it *may* be appropriate to give more weight to the opinion of a medical source who is not an 'acceptable medical source' if he or she has seen the individual more often than the treating source and has provided better supporting evidence and a better explanation for his or her opinion." *Id.* at *5 (emphasis added).

In this case, the ALJ reviewed PA Lewis's opinions and concluded that they were "not supported by the record, treatment notes, activities of daily living, etc." and therefore assigned them "minimal weight." Tr. 21. As shown below substantial evidence supports this determination.

2. *Substantial evidence supports the ALJ's decision to assign PA Lewis's opinions minimal weight.*

Plaintiff contends that the ALJ conclusorily stated that PA Lewis's opinions were not consistent with the record, and the ALJ "fail[ed] to properly discuss the probative evidence of record and explain[] why it is not support[ive] of a medical opinion." Pl.'s Br. 14. The ALJ's statement concerning the weight given to PA Lewis's opinions is indeed sparse. Nevertheless, PA Lewis's treatment notes do not reflect that Plaintiff's impairments limit her to the extent opined in the physical assessment questionnaires, and other record evidence fails to support PA Lewis's conclusions.

For example, PA Lewis examined Plaintiff approximately eight times between September 2015 and January 2018. Tr. 400–42. At three of these appointments, Plaintiff complained of pain (including in her hands, feet, lower legs, and shoulders). Tr. 433–35, 440. Other than these generalized complaints, however, Plaintiff did not complain of or exhibit (and PA Lewis did not document) difficulty sitting, walking/standing, reaching with her arms, manipulating with her fingers, or grasping, turning, and twisting objects with her hands. *See* Tr. 400–42. At most, PA Lewis noted that Plaintiff subjectively reported experiencing increased pain after Plaintiff began working at a convenience store where she stood for long periods. Tr. 434. The lack of medical evidence documenting Plaintiff's alleged inability to sit; stand/walk; lift and carry weight; and repetitively reach, handle, or finger, undermines PA Lewis's opinions in that regard. *See* Tr. 310 (estimating that Plaintiff can, during an eight-hour workday, sit three hours and stand/walk one hour; occasionally lift between ten and twenty pounds; grasp, turn, and twist objects 30% of the time with her right hand and 25% with the left; manipulate objects with her fingers 50% of the time; and reach with her arms 0% of the time), 445 (opining that Plaintiff can, during an eight-hour workday, sit and stand/walk six hours; occasionally lift up to twenty pounds; grasp, turn, and

23

twist objects with her hands 50% of the time; manipulate objects with her fingers 10% of the time; and reach with her arms 20% of the time). That is, PA Lewis's generalized observations do not coincide with many of the specific limitations described in her physical assessments.

Moreover, other acceptable medical opinions in the record reflect that Plaintiff's impairments do not limit her to the extent opined by PA Lewis. The ALJ assigned great weight to consultative examiner Seunghee Fuller, M.D.'s opinion. Tr. 22. Dr. Fuller observed that Plaintiff: "had a steady gait and symmetric gait" and "[f]inger to nose and heel to shin were normal"; had 5/5 muscle strength in all areas tested; "was able to lift, carry and handle light objects" as well as "turn a doorknob, shuffle papers, use a pen, manipulate a coin, button/unbutton a button and use a zipper with both hands"; and could "squat and rise from that position with ease," "rise from a sitting position without assistance and . . . get up and down from the exam table with ease," "walk on toes on the left with ease but not on the right," "stand and hop on one foot bilaterally." Tr. 616–17. Dr. Fuller found that Plaintiff's "examination was essentially unremarkable" and that while "there might be some functional limitations regarding lifting and carrying weight," it was "only age and habitus related." Tr. 618. Dr. Fuller opined that Plaintiff's "fibromyalgia does not appear to be limiting her functional life." *Id.* Ultimately, Dr. Fuller found that Plaintiff did not require "limitations with sitting, standing or walking," "bending, stooping, crouching and squatting," and "reaching, grasping, handling, fingering and feeling." *Id.*

Although the ALJ assigned PA Lewis's opinions minimal weight, the ALJ did not completely disregard them. Indeed, the ALJ specifically incorporated PA Lewis's opinion regarding Plaintiff's ability to handle objects into Plaintiff's physical RFC. PA Lewis estimated that, as of February 2018, Plaintiff could handle objects approximately fifty percent of the time during an eight-hour workday. *See* Tr. 19 (limiting Plaintiff to jobs involving "frequent upper

right extremity handling"), 445 (according to PA Lewis, Plaintiff can repetitively use her hands to grasp, turn, and twist objects approximately fifty percent of an eight-hour workday). The Dictionary of Occupational Titles defines frequent handling as activity that "[e]xists from 1/3 to 2/3 of the time." *See, e.g.*, Dictionary of Occupational Titles, 929.687-022, 1991 WL 688172 (4th ed. Jan. 1, 2016); *Owens v. Colvin*, 727 F.3d 850, 851–52 (8th Cir. 2013); *Graham v. Comm'r of Soc. Sec. Admin.*, Civil Action No. 3:08–CV–2133–N (BH), 2009 WL 3199382, at *8 (N.D. Tex. Oct. 2, 2009). Thus, PA Lewis's opinion that Plaintiff can use her hands fifty percent of the time falls within the definition of "frequent" handling. Because the ALJ relied on PA Lewis's assessment in formulating the physical RFC, Plaintiff's argument that "the ALJ crafted an RFC that provided for handling limitations that are entirely made up out of whole cloth" is unavailing. Pl.'s Br. 16.

The ALJ's decision to limit Plaintiff to medium work except for frequent upper right extremity handling is consistent with other evidence in the record. The ALJ assigned great weight to Dr. Fuller's opinion that Plaintiff could perform medium work, and some weight to the SAMC's opinion that concluded the same. *See* Tr. 22, 66–67, 619–24. Further, as discussed by the ALJ, Plaintiff testified at the hearing that she wears a brace on her right hand (Tr. 40) and, although her right hand is somewhat impaired, she is able to grocery shop and do laundry. Tr. 42–44; *see* Tr. 231–32. Plaintiff explained to the ALJ that PA Lewis "had [Plaintiff] doing exercises with [Plaintiff's] hands," particularly her right hand. Tr. 45. Medical records also reflect that Plaintiff suffered from, *inter alia*, carpal tunnel syndrome in both hands. Tr. 647–51. Plaintiff initially opted to continue wearing a brace on her right hand and participating in therapy to relieve her symptoms, rather than receiving a steroid injection. Tr. 651. On January 16, 2019, Plaintiff underwent carpal tunnel surgery on her right hand. Tr. 685–89.

In sum, the Court does not find that the ALJ erred by noting that PA Lewis was not an acceptable medical source or that PA Lewis's opinions were inconsistent with the record. Substantial evidence supports the ALJ's physical RFC determination. The undersigned therefore recommends that the District Judge overrule Plaintiff's second point of error and affirm the Commissioner's physical RFC determination.

**V.**    **Recommendation**

For the foregoing reasons, the undersigned recommends that the United States District Court affirm the Commissioner's decision and dismiss Plaintiff's Complaint with prejudice.

**VI.**    **Right to Object**

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within fourteen days after being served with a copy. *See* 28 U.S.C. § 636(b)(1) (2016); Fed. R. Civ. P. 72(b). To be specific, an objection must identify the specific finding, conclusion, or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's Findings, Conclusions, and Recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

Dated:  February 12, 2021.

_____

**D. GORDON BRYANT, JR.**
**UNITED STATES MAGISTRATE JUDGE**